David H. Bernstein (dhbernstein@debevoise.com)
Neelima Teerdhala (nteerdhala@debevoise.com)
Reneé Garrick (rgarrick@debevoise.com)
DEBEVOISE & PLIMPTON LLP
919 Third Avenue
New York, New York 10022
(212) 909-6696

*Attorneys for Plaintiffs Paysafe Holdings UK Limited
and Paysafecard.com Wertkarten GMBH*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | |
|---|---|
| PAYSAFE HOLDINGS UK LIMITED  and PAYSAFECARD.COM WERTKARTEN GMBH, : : : | |
| Plaintiffs, : : | No. _____ |
| vs. : : | ECF CASE |
| PAYSAFE, LLC, : : : | |
| Defendant. : | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

## COMPLAINT

Plaintiffs Paysafe Holdings UK Limited ("Paysafe Holdings") and

Paysafecard.Com Wertkarten GMBH ("Paysafecard GMBH," and together with Paysafe

Holdings, "Paysafe"), by their attorneys, Debevoise & Plimpton LLP, for their complaint

against Defendant PaySAFE, LLC ("Defendant"), allege as follows:

### INTRODUCTION

1.      This is a trademark dispute involving the trademark PAYSAFE between

Paysafe, which was founded in 1996, and Defendant, which was founded fifteen years

later, in 2011.  Despite the facts that the parties have **_coexisted in the United States_**

**_marketplace for more than six years without any confusion_** and that **_Paysafe has senior_**

**_rights in the PAYSAFE trademark_**, Defendant has begun a campaign of interfering with

Paysafe's use and registration of its senior PAYSAFE trademark.  Among other things,

Defendant has sent demand letters objecting to Paysafe's ownership and use of the

domain name <www.paysafe.com> (which Paysafe has owned since August 2011),

Defendant has asserted that Paysafe's use of Paysafe's senior trademark infringes and

dilutes Defendant's junior rights, Defendant has objected to Paysafe's use of the

PAYSAFE mark on LinkedIn and other social media platforms, and Defendant has filed

letters of protest with the United States Patent & Trademark Office ("USPTO") objecting

to Paysafe's registration of its trademarks.  Capping it all off, and despite that its

trademark rights are junior to Paysafe's rights, Defendant has demanded $3.5 million in

payment to drop its objections.  Because Defendant's assertions are without merit and

because Defendant's actions have placed a cloud over Paysafe's use and registration of

its PAYSAFE trademark and <www.paysafe.com> domain name in the United States,

Paysafe brings this action for a declaration that it has the right to use and register its

PAYSAFE trademarks and domain names in the United States and that, in any event,

Paysafe is the prior user of the PAYSAFE trademark in the United States.

### THE PARTIES

2.     Paysafe Holdings UK Limited is a limited company organized and

existing under the laws of the United Kingdom with its principal place of business at 27-

25 Canada Square, Canary Wharf, London, E14 5LQ United Kingdom.  Paysafe

Holdings' subsidiary maintains an office and employees in this district at 61 Broadway, New York, NY 10006, and sells, markets and offers Paysafe's payment processing goods and services in New York and throughout the United States.

3.       Paysafecard.com Wertkarten GMBH, a wholly-owned indirect subsidiary of Paysafe Holdings, is an AG (Aktiengesellschaft) organized and existing under the laws of Austria with its principal place of business at Am Euro Platz 2 A-1120 Wien, Austria. Paysafecard GMBH, through its U.S. subsidiary, sells, markets and offers its online prepaid card payment and payment processing services in New York and throughout the United States.

4.       On information and belief, PaySAFE, LLC is a limited liability company organized and existing under the laws of the State of Nebraska with its principal place of business at 1 Mission Drive, Winnebago, Nebraska 68071.  On information and belief, PaySAFE, LLC sells, markets and offers its escrow services in New York and throughout the United States.

**JURISDICTION AND VENUE**

5.       This action arises and is brought under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.  This Court has original jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331, 1332 and 1338.

6.       This Court has personal jurisdiction over PaySAFE, LLC by virtue of its transacting and doing business in this district and pursuant to N.Y. Civ. Prac. L & R. § 302(a).  On information and belief, PaySAFE, LLC has transacted and done business in the State of New York and in this district.

7.     Venue is proper in this district pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to this action occurred in this district.

## PAYSAFE'S TRADEMARKS

8.     Paysafe, founded in Europe in 1996, along with its subsidiaries and affiliates, provide a range of end-to-end payment solutions for online payments and mobile transactions, including electronic payment processing services, prepaid card payment services, digital wallets, online cash solutions, and electronic payment remittance services to businesses and consumers around the world.  Today, Paysafe's goods and services are used by many businesses, marketplaces, and online merchants, and also by consumers, on a worldwide basis.

9.     Paysafe has used the mark PAYSAFECARD via the domain name <www.paysafecard.com> since 2000 and has used the PAYSAFE mark via the domain name <www.paysafe.com> since 2011.

10.     Paysafecard GMBH owns U.S. Trademark Registration No. 3,864,481, registered on October 19, 2010 for the mark PAYSAFECARD (and design), as shown below, in International Class 36 in connection with "financial affairs, namely, processing electronic payments made through prepaid cards; monetary affairs, namely, administration of transactions involving funds drawn from cash using a credit or debit card over a global data network; consulting service in the field Internet payment

transaction, namely, consulting service in the field of electronic processing of bill payment data over the internet." This trademark registration has priority back to October 2009, when the application was filed with the USPTO. Because the registration disclaims any exclusive rights in the term "CARD," the protectible word element of this trademark is the term "PAYSAFE."

11. Paysafecard GMBH owns U.S. Trademark Registration No. 3,848,052, registered on September 14, 2010, for the mark PAYSAFECARD. PAY CASH. PAY SAFE (and design), as shown below, in International Class 36 in connection with "financial affairs, namely, processing electronic payments made through prepaid cards; monetary affairs, namely, administration of transactions involving funds drawn from cash using a credit or debit card over a global data network." This trademark registration has priority back to October 2009, when the application was filed with the USPTO. Because the registration disclaims any exclusive rights in the terms "CARD" and "PAY CASH," the protectible word elements of this trademark are the terms "PAYSAFE" and "PAY SAFE."

12. Paysafecard GMBH owns U.S. Trademark Registration No. 3,892,877, registered on December 21, 2010, for the mark PAYSAFECARD in International Class 36 in connection with "financial affairs, namely, processing electronic payments made

through prepaid cards; monetary affairs, namely, administration of transactions involving funds drawn from cash using a credit or debit card over a global data network."  This trademark registration has priority back to March 2010, when the application was filed with the USPTO.

13.     The registrations for the above-referenced PAYSAFECARD trademarks (the "PAYSAFECARD Registrations") have become incontestable pursuant to Section 15 of the Lanham Act, 15 U.S.C. § 1065.

14.     Paysafe has provided its online prepaid card payment and payment processing services under the PAYSAFE and PAYSAFECARD marks in the United States since September 2010.  In light of Paysafe's federal registrations, Paysafe has priority in the PAYSAFE and PAYSAFECARD marks dating back to October 2009; it also has common law rights dating back to its first use of the marks in United States commerce as of September 2010.

15.     Having built up its trademark rights in the term PAYSAFE through five years of continuous use of the PAYSAFE and PAYSAFECARD trademarks in the United States, in November 2015, Paysafe began using PAYSAFE as part of its corporate name and the umbrella brand under which it provides its full range of online payment solutions and electronic payment processing goods and services in the United States.  In connection with its corporate name change and planned adoption of a new corporate logo (as shown at right, the "PAYSAFE: Logo"), Paysafe filed new

trademark applications in the USPTO in 2017.

16.     Paysafe owns the following pending trademark applications (together, the "PAYSAFE Applications"):

a.     U.S. Application Serial No. 87/574,380, filed on August 18, 2017, for the mark PAYSAFE, in International Class 9 in connection with "computer software for electronic payment processing, electronic transfer of funds, and online payment transactions and processing; downloadable mobile application software for the ordering of consumer goods."

b.     U.S. Application Serial No. 87/624,837, filed on September 27, 2017, for the PAYSAFE: Logo, in International Class 9 in connection with "computer software for electronic payment processing, electronic transfer of funds, and online payment transactions and processing; downloadable mobile application software for the ordering of consumer goods."

c.      U.S. Application Serial No. 87/574,394, filed on August 18, 2017, for the mark PAYSAFE in International Class 16 in connection with "printed cash and gift vouchers; printed publications, namely, brochures, articles, and newsletters in the field of the provision of payment processing services."

d.     U.S. Application Serial No. 87/624,845, filed on September 27, 2017, for the PAYSAFE: Logo, in International Class 16 in connection with "printed cash and gift vouchers; printed publications, namely, brochures, articles, and newsletters in the field of the provision of payment processing services."

e.    U.S. Application Serial No. 87/574,389, filed on August 18, 2017, for the mark PAYSAFE in International Class 36 in connection with "financial services, namely, financial payment services, financial transfer and transaction payment services, electronic transfer of funds and money, and providing secure commercial transaction and payment options; payment and funds verification services; electronic payment processing services; charge card, credit card, and debit card payment processing services; stored value card and prepaid card electronic payment processing; providing tokens and vouchers with cash value for purchases at conventional and online merchants; merchant services, namely, allowing conventional and online merchants to accept stored value token and voucher payments."

f.    U.S. Application Serial No. 87/624,857, filed on September 27, 2017, for the PAYSAFE: Logo, in International Class 36 in connection with "financial services, namely, financial payment services, financial transfer and transaction payment services, electronic transfer of funds and money, and providing secure commercial transaction and payment options; payment and funds verification services; electronic payment processing services; charge card, credit card, and debit card payment processing services; stored value card and prepaid card electronic payment processing; providing tokens and vouchers with cash value for purchases at conventional and online merchants; merchant services, namely, allowing conventional and online merchants to accept stored value token and voucher payments."

g.      U.S. Application Serial No. 87/574,399, filed on August 18, 2017,

for the mark PAYSAFE in International Class 38 in connection with

"telecommunication services, namely, providing telecommunication connections

for electronic payment processing and transfer of funds, electronic transmission of

payment data via the Internet, transmission of messages relating to financial

transactions and payments, and transmission of data relating to financial

transactions and payments; mobile telecommunications services; providing a

secure network over the Internet to facilitate financial payments, financial

transactions, the provision of financial services, and the transfer of funds."

h.      U.S. Application Serial No. 87/624,863, filed on September 27,

2017, for the PAYSAFE: Logo, in International Class 38 in connection with

"telecommunication services, namely, providing telecommunication connections

for electronic payment processing and transfer of funds, electronic transmission of

payment data via the Internet, transmission of messages relating to financial

transactions and payments, and transmission of data relating to financial

transactions and payments; mobile telecommunications services; providing a

secure network over the Internet to facilitate financial payments, financial

transactions, the provision of financial services, and the transfer of funds."

17.     Through Paysafe's registration of the PAYSAFECARD trademarks in the

United States with priority back to 2009, its use of the PAYSAFE and PAYSAFECARD

marks in the United States since 2010, its registration and use of the domain name

<www.paysafe.com> since 2011, and its significant investment of time, money, and

effort in marketing and promoting its brand, the PAYSAFE and PAYSAFECARD trademarks have come to be recognized by the relevant United States public as identifying Paysafe's online payment solutions and electronic payment processing goods and services.

## DEFENDANT'S TRADEMARK

18.    On information and belief, Defendant was founded in 2011 and provides online escrow services for buyers and sellers of commercial goods such as cars and other vehicles, agricultural machinery, construction equipment, livestock, antiques, jewelry, art, and firearms under the trademark PaySAFE. On information and belief, Defendant does not offer any financial services.

19.    Defendant owns U.S. Trademark Registration No. 4,169,220, registered on July 3, 2012, for PaySAFE in International Class 36 in connection with "online escrow service for exchange of services," with first use in commerce as of October 3, 2011.

20.    Defendant's first use in commerce of its PaySAFE trademark was *two years after* Paysafe's applications to register its PAYSAFECARD Registrations in the United States, *over a year after* Paysafe's first use of the PAYSAFECARD Registrations and the PAYSAFE mark in the United States, *over a year after* the PAYSAFECARD Registrations were granted, *more than a decade after* Paysafe's registration and use of the domain name < www. paysafecard.com>, and about *two months after* Paysafe's acquisition of the domain name <www.paysafe.com>.

21.    Defendant does not offer processing electronic payments made through prepaid cards.

22.     Defendant does not offer administration of transactions involving funds drawn from cash using a credit or debit card over a global data network.

23.     Defendant does not offer consulting services in the field of electronic processing of bill payment data over the internet.

24.     Defendant does not offer computer software for electronic payment processing, electronic transfer of funds, and online payment transactions and processing,

25.     Defendant does not offer downloadable mobile application software for the ordering of consumer goods.

26.     Defendant does not offer printed cash and gift vouchers.

27.     Defendant does not offer brochures, articles, and newsletters in the field of the provision of payment processing services.

28.     Defendant does not offer financial payment services.

29.     Defendant does not offer financial transfer and transaction payment services.

30.     Defendant does not offer electronic transfer of funds and money.

31.      Defendant does not offer providing secure commercial transaction and payment options.

32.     Defendant does not offer payment and funds verification services.

33.     Defendant does not offer electronic payment processing services.

34.     Defendant does not offer charge card, credit card, and debit card payment processing services.

35.     Defendant does not offer stored value card and prepaid card electronic payment processing.

36.     Defendant does not offer providing tokens and vouchers with cash value for purchases at conventional and online merchants.

37.     Defendant does not offer merchant services allowing conventional and online merchants to accept stored value token and voucher payments.

38.     Defendant does not offer providing telecommunication connections for electronic payment processing and transfer of funds.

39.     Defendant does not offer electronic transmission of payment data via the Internet.

40.     Defendant does not offer transmission of messages relating to financial transactions and payments.

41.     Defendant does not offer transmission of data relating to financial transactions and payments.

42.     Defendant does not offer mobile telecommunications services.

43.     Defendant does not offer providing a secure network over the Internet to facilitate financial payments, financial transactions, the provision of financial services, and the transfer of funds."

**DEFENDANT'S ATTACK ON PAYSAFE'S TRADEMARKS**

44.     Shortly after Defendant's first use of the PAYSAFE trademark in the United States, Paysafecard GMBH wrote to Defendant to notify Defendant of Paysafecard GMBH's rights in the PAYSAFECARD trademark and to object to

Defendant's use of the PAY SAFE trademark, including the design mark shown below with a padlock design, and the <www.trustpaysafe.com> domain name.

45.     Defendant did not respond to Paysafecard GMBH's demands.  Upon further investigation, Paysafecard GMBH determined that, given that Defendant was using its mark and domain name for escrow services that were distinct from Paysafecard GMBH's financial services, the parties could coexist using their respective trademarks and domain names without causing confusion.  Paysafecard GMBH therefore decided not to pursue the matter any further.

46.     Cheekily, though, about one year later, in September 2012, Defendant sent a nearly identically worded demand letter to Paysafecard GMBH challenging Paysafe's trademark rights in PAYSAFE, despite the fact that Paysafe had prior rights in the PAYSAFE and PAYSAFECARD trademarks.  Specifically, Matthew Medlock, Defendant's founder, wrote to representatives of Paysafecard GMBH alleging that Paysafecard GMBH was infringing Defendant's registered trademark through its ownership and use of the domain name <www.paysafe.com>.  Paysafecard GMBH responded by rejecting Defendant's demands and noting that, if anyone was infringing, it was Defendant.  Defendant thereafter dropped its objections, thereby acquiescing to Paysafe's continued registration and use of the <www.paysafe.com> domain name.

47.    After nearly five years of silence regarding Paysafe's use of PAYSAFE, in August 2017, Defendant's counsel sent a cease-and-desist letter to Paysafe claiming that Paysafe's use of its PAYSAFE trademark infringed Defendant's trademark rights and demanding that PAYSAFE cease all use of the PAYSAFE Marks.  In that letter, Defendant expressly reserved its rights to pursue all claims and remedies against Paysafe, including trademark infringement and unfair competition claims.

48.    At about the same time, Defendant filed a claim with LinkedIn stating that Paysafe's LinkedIn page violated Defendant's trademark rights and asking that it be taken down.  Paysafe responded to LinkedIn with an explanation that Paysafe was in fact the senior owner of the PAYSAFE trademarks.  On information and belief, LinkedIn thereafter rejected Defendant's challenge to Paysafe's use of PAYSAFE on the LinkedIn social media platform.

49.    At about the same time, a financial advisor to Paysafe notified Paysafe that it received an offer from Defendant to sell its trademark registration to Paysafe.

50.    Paysafe's counsel replied to Defendant's letter on August 30, 3017, detailing why there was no likelihood of confusion between Paysafe's use of PAYSAFE for financial services and Defendant's registration of PaySAFE for escrow services, and noting that, in any event, Paysafe had senior trademark rights in the PAYSAFE trademark by virtue of its use of PAYSAFE and PAYSAFECARD trademarks and its PAYSAFECARD Registrations, all of which pre-dated Defendant's trademark rights.

51.    On September 8, 2017, Defendant's counsel responded with a letter in which it stated that it "strongly disagree[d]" with Paysafe's explanation of its senior

trademark rights, though it offered no substantive rejoinder to the facts detailed in Paysafe's letter. Defendant's counsel merely reasserted its claim of infringement and, picking up on the communication that had been sent through a third-party financial advisor, offered to sell Defendant's trademark registration to Paysafe for $3.5 million.

52. Seeing Defendant's demand as the shakedown that it was, Paysafe rejected that offer in a letter dated September 13, 2017.

53. In a further effort to attempt to disrupt Paysafe's use and registration of its trademarks and in further support of Defendant's demand for payment of tribute, Defendant filed letters of protest with the USPTO asserting that there was a likelihood of confusion between its registration and the PAYSAFE Applications. Those letters of protest led the USPTO to issue office actions on November 30, 2017 related to several of the PAYSAFE Applications. Although Paysafe is the senior owner of the PAYSAFE trademark, these office actions are now delaying the registration of the PAYSAFE Applications, including for the PAYSAFE: Logo. Paysafe intends to respond to those office actions in due course and will explain to the USPTO that Paysafe is the senior owner of the PAYSAFE trademark and that, in any event, there is no confusion between the parties' respective trademarks.

54. On December 1, 2017, Defendant's counsel sent a letter to Paysafe noting the PTO's office actions and requesting to reopen settlement discussions, presumably an effort to reassert Defendant's demand for a $3.5 million tribute.

55. On December 7, 2017, Defendant's counsel sent another letter to Paysafe, yet again demanding that Paysafe cease use of the PAYSAFE trademarks, including on

LinkedIn, Twitter, and Facebook, and through the domain name <www.paysafe.com>.
Defendant asserted that Paysafe's "use of the mark PAYSAFE . . . clearly constitutes
infringement and false designation of origin under the Lanham Act, as well as violates
state and common law prohibitions against unfair competition."  Defendant also asserted
that Paysafe's use of the PAYSAFE mark, including on Twitter, Facebook and LinkedIn,
as well as through the domain name <www.paysafe.com>, "is likely to dilute and
diminish the rights of PaySAFE, LLC."

56.     On information and belief, Defendant's challenges are part of a campaign
solely intended to extort a monetary payment from Paysafe and not based on protecting
its trademark from what it believes is a genuine existence of a likelihood of confusion.

57.     Defendant's challenge has caused uncertainty over and damage to
Paysafe's long-standing trademark rights.

58.     Paysafe thus brings this action to clear the cloud hanging over its rights in
the PAYSAFE marks.

**VALIDITY OF THE PAYSAFE MARKS**

59.     The PAYSAFECARD Registrations, PAYSAFE Applications,
PAYSAFE: Logo, and PAYSAFECARD and PAYSAFE trademarks as used in the
United States (together, the "PAYSAFE Marks") do not infringe Defendant's trademark
as there is no likelihood of confusion between the PAYSAFE Marks and Defendant's
mark.  As explained below, confusion is unlikely because the services offered in
connection with each party's marks are vastly different, the channels in which the parties'
services are marketed and sold are separate and distinct, the sophistication of the

customers who use the parties' services is high, and there has been no consumer

confusion in the six years that the marks have co-existed.

60.     The parties' services offered in connection with their trademarks are

dissimilar.  On information and belief, Defendant provides an online escrow service – it

acts as a neutral third party between a buyer and seller that collects and holds funds safely

in escrow until a particular transaction is completed by both the buyer and seller.  As

stated on its website (screenshots shown below and on the next page), Defendant's online

escrow is used for the sales and purchase of commercial goods such as cars, boats,

antiques, and livestock.



61.     In contrast, Paysafe provides online payment solutions and payment

processing technology and services to businesses, marketplaces, and online merchants to

allow them to sell their goods and services through secure electronic payments.  These

businesses and online merchants must implement and integrate Paysafe's back-end

technology in order to use Paysafe's goods and services.  Paysafe also provides a handful

of services to consumers, such as digital wallets, online cash solutions, and remittance

solutions.  These services allow consumers to safely spend, send and receive money

online for all of their online transactions across a range of online merchants.

62.     There are, therefore, significant differences between Paysafe's services

and Defendant's services such that consumers would not confuse them.  Consumers

requiring an online escrow for a specific, one-time commercial goods purchase would not

mistake Paysafe's payment processing platform or its digital wallet or online prepaid card

solutions as an escrow service.

63.     The channels through which the parties' goods and services are marketed

and sold are different as well.  On information and belief, Defendant's services are

exclusively marketed to and used by end consumers - the buyer and seller in a

commercial goods transaction.  On information and belief, Defendant's service is

provided solely online as customers must sign up online to use Defendant's service and

submit everything required for the escrow through Defendant's online system.

64.     Many of Paysafe's customers are businesses and online merchants who

sell their goods and services to end consumers as well as to other businesses. Paysafe

markets and sells its payment solutions and payment processing services directly to these

business customers, and Paysafe's business customers must work offline with Paysafe to customize and implement Paysafe's payment solutions.

65.     Paysafe's business customers are sophisticated and discerning when it comes to selecting vendors and technology solutions.  As such, when selecting providers of payment processing services, they will know exactly whom they are dealing with and would not confuse Defendant for Paysafe.  Paysafe's non-business consumers similarly are sophisticated, technologically-oriented consumers who require particular digital payment and prepaid card services and would not confuse those services for Defendant's escrow services.

66.     On information and belief, the same is true of Defendant's customers. Buyers and sellers who are participating in a transaction of sufficient value that they would set up an online escrow and incur the associated fees are highly unlikely to confuse Paysafe's services for Defendant's services.

67.     In the six years of the parties' co-existence in the United States marketplace, to the best of Paysafe's knowledge, there have been no incidents of actual consumer confusion between the parties' and their services.  For example, to the best of Paysafe's knowledge, no consumers have purchased either party's services because they were confused regarding the source of those services.

68.     The fact that parties have co-existed for so long with no confusion demonstrates that there is no likelihood of confusion between Paysafe's use of the PAYSAFE Marks and Defendant's use of the PaySAFE mark.

69.     Indeed, Defendant has known of Paysafe's use of PAYSAFE since at least 2011, shortly after Defendant itself adopted its PaySAFE trademark.  Moreover, despite raising objections in 2012, Defendant thereafter dropped its objections, thus acquiescing to Paysafe's continued investment in and use of its PAYSAFE Marks during the past five years.

70.     Even if there were a likelihood of confusion between the PAYSAFE Marks and Defendant's PaySAFE mark, that would not support Defendant's assertions of infringement, false designation of origin, dilution and unfair competition.  That is because Paysafe has senior rights in the PAYSAFE Marks when used in connection with financial goods and services.

71.     The PAYSAFE Marks are therefore valid and do not infringe, dilute or otherwise violate Defendant's trademark rights.

**COUNT I**
**DECLATORY JUDGMENT OF NON-INFRINGEMENT**
**OF A FEDERALLY REGISTERED TRADEMARK**

72.     Paysafe repeats and realleges each and every allegation in the foregoing paragraphs as if fully set forth herein.

73.     An actual and justiciable controversy exists between Paysafe and Defendant regarding Defendant's allegations that the PAYSAFE Marks infringe Defendant's federally registered trademark.

74.     Paysafe is entitled to a judgment declaring that the PAYSAFE Marks do not infringe Defendant's trademark and does not violate Section 32 of the Lanham Act, 15 U.S.C. § 1114.

## COUNT II
## DECLATORY JUDGMENT OF NON-INFRINGEMENT
## UNDER FEDERAL LAW

75.     Paysafe repeats and realleges each and every allegation in the foregoing paragraphs as if fully set forth herein.

76.     An actual and justiciable controversy exists between Paysafe and Defendant regarding Defendant's allegations that the PAYSAFE Marks infringe Defendant's trademark or constitute false designation of origin under the Lanham Act.

77.     Paysafe is entitled to a judgment declaring that the PAYSAFE Marks do not infringe Defendant's trademark and does not violate Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

## COUNT III
## DECLATORY JUDGMENT OF NON-DILUTION
## UNDER FEDERAL LAW

78.     Paysafe repeats and realleges each and every allegation in the foregoing paragraphs as if fully set forth herein.

79.     An actual and justiciable controversy exists between Paysafe and Defendant regarding Defendant's allegations that the PAYSAFE Marks dilute Defendant's trademark.

80.     Defendant's trademark is not entitled to protection under the Trademark Dilution Revision Act because its PaySAFE trademark is not famous.

81.     Paysafe is entitled to a judgment declaring that the PAYSAFE Marks do not dilute Defendant's trademark and does not violate Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).

## COUNT IV
## DECLATORY JUDGMENT OF NON-CYBERSQUATTING
## UNDER FEDERAL LAW

82.     Paysafe repeats and realleges each and every allegation in the foregoing paragraphs as if fully set forth herein.

83.     An actual and justiciable controversy exists between Paysafe and Defendant regarding Defendant's allegations that the <ww.paysafe.com> domain name cybersquats upon or otherwise violates dilute Defendant's trademark.

84.     Paysafe is entitled to a judgment declaring that the <www.paysafe.com> domain name does not cybersquat upon Defendant's trademark and does not violate Section 43(d) of the Lanham Act, 15 U.S.C. § 1125(d).

## COUNT V
## DECLATORY JUDGMENT OF NON-INFRINGEMENT
## UNDER STATE LAW

85.     Paysafe repeats and realleges each and every allegation in the foregoing paragraphs as if fully set forth herein.

86.     An actual and justiciable controversy exists between Paysafe and Defendant regarding Defendant's allegations that the PAYSAFE Marks infringe Defendant's trademark or violate state and common law prohibitions against unfair competition.

87.     Paysafe is entitled to a judgment declaring that the PAYSAFE Marks do not infringe Defendant's trademark and does not violate any state laws against trademark infringement or unfair competition.

## COUNT VI
## DECLATORY JUDGMENT OF NON-DILUTION
## UNDER STATE LAW

88.     Paysafe repeats and realleges each and every allegation in the foregoing

paragraphs as if fully set forth herein.

89.     An actual and justiciable controversy exists between Paysafe and

Defendant regarding Defendant's allegations that the PAYSAFE Marks dilute

Defendant's trademark.

90.     Paysafe is entitled to a judgment declaring that the PAYSAFE Marks do

not dilute Defendant's trademark and does not violate any state laws against trademark

dilution.

### PRAYER FOR RELIEF

WHEREFORE, Paysafe respectfully prays

A.     That the Court declare that the PAYSAFE Marks do not infringe or dilute

upon Defendant's trademark, or constitute false designation of origin, do not violate

Sections 32, 43(a) or 43(c) of the Lanham Act, 15 U.S.C. §§ 1114, 1125(a), and 1125(c).

B.     That the Court declare that the PAYSAFE Marks do not infringe or dilute

upon Defendant's trademark, or constitute false designation of origin or unfair

competition, under any state law.

C.     That the Court declare that the <www.paysafe.com> domain name does

not cybersquat upon or otherwise violate Defendant's trademark and does not violate

Section 43(d) of the Lanham Act, 15 U.S.C. § 1125(d).

D.      That Paysafe have such other and further relief as the Court may deem just

and proper.

Dated:  New York, New York
        January 4, 2018

**DEBEVOISE & PLIMPTON LLP**

By:  _/s/ David H. Bernstein_____
     David H. Bernstein (dhbernstein@debevoise.ceom)
     Neelima Teerdhala (nteerdhala@debevoise.com)
     Reneé Garrick (rgarrick@debevoise.com)
DEBEVOISE & PLIMPTON LLP
919 Third Avenue
New York, New York 10022
(212) 909-6696

*Attorneys for Plaintiffs Paysafe Holdings UK Limited
and Paysafecard.com Wertkarten GMBH*